UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PETER A.C. LONG,                         :
                                         :        CIVIL ACTION
       v.                                :
                                         :        No. 05-4454
VALLEY FORGE MILITARY ACADEMY            :
FOUNDATION, ET AL.                       :

**SURRICK, J.**                                    **DECEMBER  8 , 2008**

## MEMORANDUM & ORDER

Presently before the Court are Defendants Valley Forge Military Academy Foundation

and the Board of Trustees of the Valley Forge Military Academy Foundation's Motion to

Dismiss (Doc. No. 11) and Defendant H.R. Impact's Motion to Dismiss (Doc. No. 12).  For the

following reasons, the motions will be granted in part and denied in part.

## I.      BACKGROUND

Plaintiff Peter A.C. Long ("Plaintiff") is a retired Admiral of the United States Navy.

(Doc. No. 10 ¶ 6.)  On August 17, 2000, the Valley Forge Military Academy and College (the

"VFMAC") hired Plaintiff as its eighth President.  (*Id*.)  The VFMAC is a military-based

boarding school in Delaware County, Pennsylvania, that enrolls approximately 600 young male

students in the seventh grade through the second year of college.  (*Id*. ¶ 7.)  The Valley Forge

Military Academy Foundation (the "Foundation") operates the VFMAC.  (*Id*. ¶ 2.)  The

Foundation has a Board of Trustees (the "Board of Trustees"), which oversees the VFMAC's

operations.  (*Id*. ¶ 3.)

On July 1, 2003, Plaintiff entered into an Employment Agreement with the Foundation.

(*Id*., Ex. A.)  The Employment Agreement is governed by Pennsylvania law and provides that

the Foundation will employ Plaintiff as the VFMAC's President for a period of three years,

beginning on July 1, 2003, and ending on June 30, 2006.  (*Id.*)  The Employment Agreement outlines Plaintiff's salary and employment benefits, including paid vacation and a Non-Qualified Deferred Compensation Plan maintained by the Foundation.  (*Id.* at 4.)  The Employment Agreement allows the Foundation to terminate Plaintiff's employment at any time "for cause" or "without cause."  (*Id.* at 3-4.)  The Employment Agreement defines "for cause" as:

> (i) the failure by [Plaintiff] to perform the Duties of the President satisfactorily; (ii) any material misrepresentation by [Plaintiff] of his background or qualifications; or (iii) unacceptable personal conduct, as determined by a two-thirds (2/3) vote of the Board of Trustees of The Foundation in its sole discretion and without further recourse by [Plaintiff].

(*Id.* at 3.)  The Employment Agreement does not define "without cause," but provides that it may be "determined by a two-thirds vote of the Board of Trustees of the Foundation, in its sole discretion and without any further recourse by [Plaintiff]."  (*Id.* at 4.)  The classification of Plaintiff's termination of employment as "for cause" or "without cause" affects the benefits Plaintiff is entitled to receive.  If the Foundation terminates Plaintiff's employment "without cause," the Foundation "shall continue to pay [Plaintiff's] salary at its then-current rate and Fringe Benefits for a period of one year."  (*Id.* at 4.)  If the Foundation terminates Plaintiff's employment "for cause," Plaintiff does not receive those benefits.

Termination of Plaintiff's employment "for cause" similarly affects the benefits he is entitled to receive under a Non-Qualified Deferred Compensation Plan (the "Plan").  The Plan provides that "[if Plaintiff] voluntarily terminates his employment with the Foundation without Good Reason, or if [Plaintiff] is terminated by the Foundation for Cause . . . the Allocations shall be irrevocably forfeited. . . ."  (Doc. No. 10, Ex. B at 2.)  The Plan provides that "[if Plaintiff] voluntarily terminates employment with the Foundation for Good Reason, or if [Plaintiff] is

terminated by the Foundation without Cause . . . , an amount equal to the surrender value of the Policy shall be distributed to [Plaintiff] as soon as practicable after such termination of employment. . . ." (*Id*.)

The amended complaint alleges that in the Spring of 2004, the Board of Trustees hired a human relations firm, Defendant H.R. Impact, to build a sexual harassment case against Plaintiff in order to justify termination of his employment "for cause." (Doc. No. 10 ¶ 18.) Plaintiff alleges that to build such a case, an employee of H.R. Impact, Catherine Warrin ("Warrin"), approached several women at the VFMAC – in the absence of any written or oral complaints against Plaintiff – and inquired whether Plaintiff had ever engaged in any unwanted physical contact or made them feel uncomfortable. (*Id*. ¶¶ 19-22.) Two of the women allegedly told Warrin about isolated instances of non-sexual, non-harassing contact. (*Id*. ¶ 21.) A third woman strongly denied any inappropriate conduct. (*Id*.) A fourth woman described a peck on the cheek for which Plaintiff apologized and did not repeat. (*Id*.) Plaintiff asserts that Warrin drafted a summary of her investigation that improperly and inaccurately suggests that he committed sexual harassment. (*Id*. ¶¶ 20, 23.) Plaintiff asserts that Warrin used her investigation to manufacture a false "cause" for terminating his employment, thereby denying him various benefits. (*Id*. ¶ 23.)

On June 16, 2004, the Foundation informed Plaintiff that the four women had filed complaints against him for unwanted physical touching and sexual harassment. (*Id*. ¶¶ 25-26.) Once informed of the allegations, Plaintiff retained counsel. (*Id*. ¶ 27.) Thereafter, the Board of Trustees convened a Conduct Review Committee to review the results of H.R. Impact's investigation and to present a report. (*Id*., Ex. C.) The report recommended that the Foundation continue Plaintiff's employment so long as he agreed to accept a number of Resolutions (the

3

"September Resolutions").  (*Id.*, Ex. D.)  The September Resolutions required, among other things, that Plaintiff:  (1) sign a release and indemnification extending to the VFMAC, its agents, Board members, officers, and employees; (2) sign and send letters of apology to each of the complainants; (3) distribute a memorandum to the entire VFMAC staff reaffirming his commitment to the school's Sexual Harassment Policy; (4) participate in an executive coaching course at his expense; (5) adhere to the Resolutions as part of his Duties under his Employment Agreement; and (6) reimburse the VFMAC and all released parties for costs and legal fees should the VFMAC have to seek court action to enforce the Employment Agreement.  (*Id.*, Ex. E.)  On September 28, 2004, the Board of Trustees adopted the September Resolutions and voted not to terminate Plaintiff's employment "for cause."  (*Id.*)  On the advice of counsel, Plaintiff refused to agree to the terms of the September Resolutions.  (Doc. No. 10 ¶¶ 37-41.)

The Board of Trustees characterized Plaintiff's refusal to adopt the September Resolutions as insubordination and grounds for dismissal.  (*Id.* ¶ 43.)  On November 3, 2004, the Board adopted another set of Resolutions (the "November Resolutions") which stated that:

> [Plaintiff] is terminated for cause for the reasons set forth in pages 8 and 9 of the Conduct Review Committee Report, failure to comply with the Board resolutions of September 28, 2004 . . .  The termination is effective fourteen (14) days from today's date (November 3, 2004) unless an earlier written agreed retirement is executed between [Plaintiff] and Valley Forge Military Academy. . . .

(*Id.*, Ex. G.)  The Board of Trustees authorized a subcommittee "to meet with [Plaintiff] and attempt to negotiate and execute" an agreed retirement with Plaintiff.  (*Id.* ¶ 46; *see also id.*, Ex. G.)  On November 9, 2004, the subcommittee presented Plaintiff with terms and conditions for an agreed retirement.  (Doc. No. 10 ¶¶ 46-48.)  The terms and conditions required Plaintiff to release the VFMAC from any future liability, but did not require the VFMAC to release Plaintiff

from similar liability.  (*Id.* ¶ 49.)  Plaintiff allegedly proffered an alternative release that mutually absolved both Plaintiff and the VFMAC of all future liability, but the subcommittee rejected it. (*Id.*)  Plaintiff claims that he acted in good faith to fulfill the other terms and conditions that the subcommittee presented.  On November 13, 2004, Plaintiff tendered his resignation and, on December 15, 2004, he vacated the President's house in a timely manner.  (*Id.* ¶¶ 50-51.)

Plaintiff then applied for unemployment compensation with the Commonwealth of Pennsylvania.  (*Id.* ¶ 53.)  On February 10, 2005, the Pennsylvania Unemployment Compensation Board awarded Plaintiff unemployment compensation, finding that the VFMAC discharged Plaintiff and that Plaintiff was not guilty of willful misconduct.  (*Id.* ¶ 55.)  The Pennsylvania Unemployment Compensation Board of Review twice affirmed the decision.  (*Id.* ¶ 57.)

On August 22, 2005, Plaintiff commenced the instant action against Defendants.  (*See* Doc. No. 1.)  On September 22, 2005, Plaintiff filed an amended complaint.  (*See* Doc. No. 10.) The amended complaint contains five counts.  Counts I through III assert claims against the Foundation and the Board of Trustees (collectively, the "Academy Defendants").  Counts IV and V assert claims only against Defendant H.R. Impact.  The amended complaint specifically alleges the following claims:

Count I:  Breach of contract against the Academy Defendants for violations of the Employment Agreement.  (Doc. No. 10 ¶¶ 59-71.)

Count II:  Breach of contract against the Academy Defendants for violations of the Employment Agreement, as allegedly modified.  (*Id.* ¶¶ 72-83.)

Count III:  Violation of the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260, *et seq.*, against the Academy Defendants.  (*Id.* ¶¶ 84-88.)

Count IV:  Common law negligence or gross negligence against H.R. Impact.  (*Id.* ¶¶ 89-

95.)

     Count V:  Common law intentional interference with contract against H.R. Impact.  (*Id.* ¶¶ 96-98.)

Plaintiff also seeks punitive damages against H.R. Impact in Counts IV and V.  (*Id.* ¶¶ 95, 98.)

Plaintiff asserts that this Court has diversity jurisdiction because he is a resident of Florida, and

Defendants are organized under the laws of Pennsylvania and conduct business principally in

Pennsylvania.  (*Id.* ¶¶ 1-5.)

     The Academy Defendants filed the instant motion to dismiss the amended complaint

based on several grounds.  (*See* Doc. No. 11).  They argue under Rule 12(b)(1) that the Court

lacks diversity jurisdiction because members of the Board of Trustees are citizens of Florida, as

is Plaintiff.  (*See* Doc. 11-13 at 7-16.)  They argue under Rules 4 and 12(b)(5) that Plaintiff did

not properly serve the Board of Trustees with the summons and amended complaint.  (*Id.* at 4-7.)

Finally, they argue under Rule 12(b)(6) that Plaintiff fails to state claims in Counts I through III.

(*Id.* at 16-22.)  The Academy Defendants have also moved to strike from the amended complaint

references to certain evidence that it claims is not admissible.  (*Id.* at 22-25.)

     Defendant H.R. Impact filed its motion to dismiss the amended complaint asserting under

Rule 12(b)(6) that Plaintiff fails to state a claim in Counts IV and V.  (*See* Doc. No. 12.)

Defendant H.R. Impact has also moved to dismiss Plaintiff's claims for punitive damages.  (*Id.*)

## II.    DISCUSSION

### A.    Subject Matter Jurisdiction

     Pursuant to Federal Rule of Civil Procedure 12(b)(1), a court must grant a motion to

dismiss if the court lacks subject matter jurisdiction.  *Fin. Software Sys. v. First Union Nat'l*

*Bank*, 84 F. Supp. 2d 594, 596 (E.D. Pa. 1999) (*citing Mortensen v. First Fed. Sav. and Loan*

*Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).  District courts have subject matter jurisdiction over all

civil actions (1) arising under the United States Constitution, laws, or treaties of the United

States or (2) between citizens of different states where the matter in controversy exceeds

$75,000.  28 U.S.C. §§ 1332-1333 (2000).  Diversity jurisdiction is not available when any

plaintiff is a citizen of the same state as any defendant.  28 U.S.C. § 1332(a); *Owen Equip. &*

*Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  When a party is an unincorporated

association, its citizenship for diversity purposes is that of each of its members.  *United*

*Steelworkers of Am. v. R. H. Bouligny, Inc.*, 382 U.S. 145, 146 (1965) (rejecting the district

court's reasoning that unincorporated associations should be treated in the same manner as

corporations); *Carlsberg Res. Corp. v. Cambria Sav. & Loan Ass'n*, 554 F.2d 1254, 1259 (3d

Cir. 1977) ("The citizenship of an unincorporated association, for at least jurisdictional purposes,

is deemed to be that of each of its members").[1]

 "The party asserting diversity jurisdiction bears the burden of proof. . . . A party

generally meets this burden by proving diversity of citizenship by a preponderance of the

evidence."  *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006) (citations

omitted).  We note that "no presumptive truthfulness attaches to [a] plaintiff's allegations, and

the existence of disputed material facts will not preclude the trial court from evaluating for itself

the merits of jurisdictional claims."  *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir.

2006) (citations and internal quotations marks omitted).

---

[1] "A business organized as a corporation, for diversity jurisdiction purposes, is 'deemed to be a citizen of any State by which it has been incorporated' and . . . also 'of the State where it has its principal place of business.'"  *Wachovia Bank, Nat'l Ass'n v. Schmidt*, 546 U.S. 303 (2006) (*quoting* 28 U.S.C. § 1332(c)).

The Academy Defendants contend that this Court lacks diversity jurisdiction, because the Board of Trustees includes members who are citizens of Florida, the same state of which Plaintiff is a citizen. (*See* Doc. No. 11-13 at 7-16.)  The Supreme Court considered this issue in *Thomas v. Board of Trustees of the Ohio State University*, 195 U.S. 207, 213 (1904).  The plaintiff in *Thomas* named the university's board of trustees as a defendant.  *Id*.  The plaintiff did not assert that the university's board of trustees was a corporation, and there were no facts to indicate that the board of trustees was organized as a corporation under state law.  *Id*.  The court observed that, "the averment is only that the defendant board of trustees is a citizen of and domiciled in Ohio; not that the trustees themselves are citizens of that state."  *Id*. at 214.  The court concluded that the board of trustees was not a citizen of Ohio for purposes of diversity jurisdiction because diversity jurisdiction "must appear from distinct allegations or from facts clearly proven."  *Id*. at 218.  The court held that the board of trustees was a citizen of each state where its members resided.  *Id*.; *see also Carden v. Arkoma*, 494 U.S. 185, 195-96 (1990) ("We adhere to our oft-repeated rule that diversity jurisdiction in a suit by or against the entity depends on the citizenship of 'all the members[.]'") (citations omitted);  *DPCC, Inc. v. Cedar Fair, L.P.*, 21 F. Supp. 2d 488, 490 (E.D. Pa. 1998) (same).  The court noted that the board of trustees could be sued in its collective name – without naming as defendants the individual board members – so long as the members had diverse citizenship.  *Thomas*, 195 U.S. at 218; *see also Carlsberg Res. Corp.*, 544 F.2d at 1258 (rejecting the argument that an unincorporated entity is a citizen of the state of creation because it can sue and be sued in its collective name).

Clearly, Plaintiff does not have to name the individual members of the Board of Trustees as defendants in order to sue the Board of Trustees in its collective name.  *See Thomas*, 195 U.S.

at 218.  However, Plaintiff must allege either that the Board of Trustees is incorporated in a state

other than Florida, or that each individual Trustee is not a citizen of Florida.  *See id*.  Plaintiff

alleges neither of these things.  Moreover, Defendants contend that the Board of Trustees is an

unincorporated association and that its membership includes at least one citizen from Florida

now, and during the period of Plaintiff's employment.  (*See* Doc. No. 11 at 9-10, Ex. E.)

Defendants have proffered a sworn affidavit from a former board member that supports this

contention.  (*Id*.)  Since it appears that the Board of Trustees is an unincorporated association

that has at least one member with Florida citizenship, and Plaintiff is a citizen of Florida, the

Board of Trustees' presence in this case destroys diversity.  *See Thomas*, 195 U.S. at 218.

The parties in this matter would be completely diverse but for the inclusion of the Board

of Trustees as a defendant.  Under Federal Rule of Civil Procedure 21, we may dismiss a non-

diverse party like the Board of Trustees in order to remedy a jurisdictional defect, as long as the

party is not indispensable under Rule 19.  *See* Fed. R. Civ. P. 21 ("[T]he court may at any time,

on just terms, add or drop a party."); *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832

(1989) ("[I]t is well settled that Rule 21 invests district courts with authority to allow a

dispensable non-diverse party to be dropped at any time."); *Publicker Indus., Inc. v. Roman*

*Ceramics Corp*., 603 F.2d 1065, 1069 (3d Cir. 1979) (noting that the court may dismiss a non-

diverse party in order to achieve diversity so long as the party is not indispensable under Rule

19).  Rule 19(a) provides that a party is "necessary" if:

> (1) in the party's absence complete relief cannot be accorded among those already
> parties, or
>
> (2) the party claims an interest relating to the subject of the action and is so
> situated that the disposition of the action in the party's absence may

(i) as a practical matter impair or impede the party's ability to protect that interest or

(ii) leave any of the existing parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a); *see also Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 319 (3d Cir. 2007). Where a party is not necessary, that party is "by definition not 'indispensable' to the action." *Mallieu-Golder Ins. Agency, Inc. v. Executive Risk Indem. Inc.*, 254 F. Supp. 2d 521, 525 (M.D. Pa. 2003).

Plaintiff concedes that the Board of Trustees is not a necessary party and that he can obtain complete relief from the Foundation. (*See* Doc. No. 16 at 13-18; *see also* Doc. No. 19 at 2, noting that "it appears that Plaintiff may be able to obtain complete relief from the Foundation.") In fact, Plaintiff has indicated a willingness to dismiss the Board of Trustees as a defendant and proceed only against the Foundation and H.R. Impact as defendants.[2] (*See* Doc.

---

[2] The Academy Defendants assert that Plaintiff sought a joint stipulation to dismiss the Board of Trustees in order to avoid the prejudicial effects of Rule 41(a)(1). (*See* Doc. No. 18 at 2.) Rule 41 provides:

(a) Voluntary Dismissal.

(1) By the Plaintiff.

(A) Without a Court Order. Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:

(i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or

(ii) a stipulation of dismissal signed by all parties who have appeared.

(B) Effect. Unless the notice or stipulation states otherwise, the dismissal is without

No. 16 at 13, noting "Plaintiff's willingness to dismiss the Board of Trustees as a Defendant in this matter" and stating that "none of the individual trustees" is a necessary and indispensable party.)  Moreover, the Foundation agrees that the Board of Trustees is not a necessary party in this litigation.  (*See* Doc. No. 18 at 3-8.)  In addition, the Board of Trustees is not "so situated" that its absence from the case will impair its own interests or subject the other defendants "to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations."  *See* Fed. R. Civ. P. 19(a).  Plaintiff executed the Employment Agreement with the Foundation, not with the Board of Trustees.  (*See* Doc. No. 10 at 2-3.)  The Board of Trustees cannot be held liable for breach of the Employment Agreement.  *See Fleetway Leasing Co. v. Wright*, 697 A.2d 1000, 1003 (Pa. Super. Ct. 1997) ("In Pennsylvania, a person who is not a party to a contract cannot be held liable for a breach by one of the parties to a contract.").  Thus, we conclude that the Board of Trustees is not a necessary or indispensable party in this litigation.  *See Mallalieu-Golder*, 254 F. Supp. at 525 (noting that where a party is not necessary, that party is "by definition" not

---

    prejudice.  But if the plaintiff previously dismissed any federal or state court action
    based on or including the same claim, a notice of dismissal operates as an
    adjudication on the merits.

Fed. R. Civ. P. 41.  Defendants contend that the *res judicata* principles of Rule 41 would preclude Plaintiff from proceeding against the Board of Trustees for the same claims in a subsequent action if Plaintiff unilaterally dismissed the Board of Trustees in this action, because he previously brought a similar action in a Pennsylvania state court.  (*See* Doc. No. 18 at 3-4.)  Plaintiff concedes that he sought a joint stipulation in order to avoid those preclusive effects.  (*See* Doc. No. 19 at 2.)  Nevertheless, Plaintiff asserts that he would be entitled to bring a subsequent suit against the Board of Trustees – notwithstanding a joint stipulation – if discovery in this matter yields evidence sufficient to support a claim.  (*Id*.; *see also* Doc. No. 18 at 3-4.)
    The plain language of Rule 41, as amended in 2007, suggests that even dismissal by joint stipulation signed by all the parties would prejudice a later claim under the facts alleged here.  However, we need not address this dispute as it is not presented to us for resolution.  We mention it only to highlight the fact that the parties agree that the Board of Trustees is not an indispensable party.  Their disagreement is over how to dismiss the Board from this lawsuit.

indispensable).  The Board of Trustees will therefore be dismissed as a defendant in order to preserve diversity jurisdiction.  *See* Fed. R. Civ. P. 21; *see also Madison v. Universal Mktg. Innovators, Inc.*, No. 00-3924, 2004 WL 1737486, at *5 (E.D. Pa. Aug. 3, 2004) (dismissing defendant without prejudice in order to preserve diversity jurisdiction, where defendant was not necessary or indispensable to the litigation).  However, the Board of Trustees will be dismissed without prejudice because "[w]here federal subject matter jurisdiction does not exist, federal courts do not have power to dismiss with prejudice, even as a procedural sanction."  *In re Orthopedic "Bone Screw" Prods. Liab. Litig.*, 132 F.3d 152, 155 (3d Cir. 1997) (noting that parties must be dismissed without prejudice where the court lacks subject matter jurisdiction); *see also Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 122 (2d Cir. 1999) (concluding that "where a court lacks subject matter jurisdiction, it also lacks the power to dismiss with prejudice").

### B.    Failure to State a Claim

The Academy Defendants also move to dismiss the amended complaint under Rule 12(b)(6) for failure to state a claim.  A Rule 12(b)(6) motion to dismiss must be denied if Plaintiff's factual allegations are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true, (even if doubtful in fact)."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007) (internal citations omitted).  In addition, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . [P]laintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id*. (internal citations omitted).  "[A] court need

not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (citations omitted).

### 1.    Breach of Employment Agreement (Count I)

Count I alleges that the Academy Defendants breached Plaintiff's Employment Agreement.  (*See* Doc. No. 11-13 at 16-17.)  The Academy Defendants sought dismissal of Count I "against Defendant, the Board of Trustees only," and not against the Foundation.  (*Id*. at 17.)  Therefore, Count I of the amended complaint remains with respect to the Foundation.

### 2.    Breach of Employment Agreement, as Amended (Count II)

Plaintiff pleads Count II "in the alternative to Count I."  (Doc. No. 10 ¶ 73.)  Count II contains two claims in a single count.[3]  The first claim is that the Academy Defendants breached an amended Employment Agreement by failing to "negotiate" a retirement agreement with Plaintiff.  (Doc. No. 10 ¶¶ 77, 79.)  The second claim is that the Academy Defendants breached a duty of good faith and fair dealing in connection with a contractual obligation to "negotiate." (*Id.* ¶¶ 78-79.)

#### a.    Breach of Contract for Failure to "Negotiate"

Plaintiff alleges that the Academy Defendants failed to "negotiate" an agreed retirement and thereby breached the Employment Agreement, as amended.  (*See id*. ¶¶ 77, 79.)  In order to plead a proper claim for breach of contract under Pennsylvania law, Plaintiff must allege "(1) the existence of a contract to which he and the defendants were parties, (2) the contract's essential

---

[3] We note that the Federal Rules of Civil Procedure provide that, "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense."  Fed. R. Civ. P. 10(b).

terms, (3) breach of the contract by the defendants, and (4) damages resulting from the breach." *Rototherm Corp. v. Penn Linen & Uniform Serv., Inc.*, No. 96-6544, 1997 WL 419627, at *12 (E.D. Pa. July 3, 1997); *see also Cottman Transmission Sys., Inc. v. Melody*, 851 F. Supp. 660, 672 (E.D. Pa. 1994).

The contract on which Plaintiff relies is the Employment Agreement, as amended by the September and November Resolutions.  (Doc. No. 10 ¶ 74.)  Plaintiff asserts that the November Resolutions amend the Employment Agreement and authorize a committee to act on behalf of the Foundation "to meet with [Plaintiff] and attempt to negotiate and execute [an agreed retirement] acceptable to [the Foundation]." (*Id*. ¶ 44.)  Under the November Resolutions, if Plaintiff did not execute an agreed retirement acceptable to the Foundation within fourteen days, the Foundation would terminate Plaintiff's employment "for cause."  (*Id*.)  Plaintiff contends that this provision – in conjunction with the other provisions in the September and November Resolutions – amended the Employment Agreement and required the Foundation to "attempt to negotiate" an agreed retirement.  (*See id*.)  Plaintiff claims that Defendants "failed to negotiate the retirement" as the amended Employment Agreement requires, and instead "authoritatively dictated terms to [him]."  (*Id*. ¶¶ 79-80.)

The Employment Agreement provides:

> This Agreement contains the entire agreement of the parties.  No change or modification of this Agreement shall be valid unless the same is in writing and signed by all the parties hereto.

(Doc. No. 10, Ex. A, at 4.)  In order for the September and November Resolutions to amend the Employment Agreement, all of the parties, including Plaintiff, must have agreed to the September and November Resolutions.  (*See* Doc. No. 10 ¶ 44.)  It appears that there never was a

14

mutual agreement between the Foundation and Plaintiff with regard to the September and

November Resolutions.  (*See* Doc. No. 10, Ex.'s D and G.)  The September and November

Resolutions bear none of the parties' signatures or other indicia of mutual assent.  (*See id*.)

Moreover, the provision in the November Resolutions simply authorizes a committee to

negotiate with Plaintiff on the Foundation's behalf.  (*Id*.)  To the extent that the November

Resolutions imposed any duty on the Foundation to "negotiate" with Plaintiff, such a duty

extended only to the committee.  Plaintiff was not a party to the November Resolutions that

purportedly amended the Employment Agreement.  *See Rototherm*, 1997 WL 419627, at *12

(noting that to state a claim for breach of contract, Plaintiff must allege "the existence of a

contract to which he and the defendants were parties").

　　　　In addition, the provision in the November Resolutions requiring the Foundation to

"attempt to negotiate" an agreed retirement is more accurately characterized as part of a

proposed settlement agreement.[4]  Under such an agreement, the Foundation would agree not to

exercise its right under the Employment Agreement to terminate Plaintiff's employment "for

cause," as long as Plaintiff executed an acceptable retirement agreement within fourteen days.  It

appears that an independent settlement agreement – not an amended Employment Agreement –

is the only possible contract on which Plaintiff could pursue this claim.  However, even a claim

based on an alleged settlement agreement fails as a matter of law.  The purported agreement

required Plaintiff to execute an agreed retirement "acceptable" to the Foundation.  Plaintiff does

---

[4] The parties dispute the existence of a settlement agreement.  Defendants contend that the parties negotiated to reach a settlement, but they could not agree to a mutual release of liability and thus never finalized an agreement.  (*See* Doc. No. 11-13 at 18.)  Plaintiff contends that the parties reached an agreement in principal, and that he substantially performed his obligations under that agreement in good faith despite Defendants' failure to "negotiate."  (*See* Doc. No. 10 ¶ 50.)

not assert that he reached an agreed retirement "acceptable" to the Foundation.  On the contrary,

Plaintiff asserts that the Foundation "demand[ed] a unilateral release" and "rejected [Plaintiff's]

counterproposal" that included a mutual release.  (Doc. No. 10 ¶ 49.)  Plaintiff alleges that he

acted "in good faith to fulfill the other terms of the parties' agreement in principal," but there is

no dispute that the parties did not execute a settlement agreement.  (Doc. No. 10 ¶ 50.)  If there is

any cause of action, it is not for breach of contract.  Plaintiff has failed to plead a proper claim

for breach of contract under Pennsylvania law, *see Rototherm*, 1997 WL 419627, at *12, and

Plaintiff's allegations do not provide the grounds for an entitlement to relief, *see Twombly*, 127

S.Ct. at 1965.

b.       Breach of Duty of Good Faith and Fair Dealing

Plaintiff's second claim in Count II is based on a duty to perform under a contract in

good faith.[5]  Plaintiff alleges that the November Resolutions required the Foundation to

"negotiate" to reach a retirement agreement, and that Defendants insisted during those

---

[5] Plaintiff's claim should not be confused with a more general breach of a duty to negotiate a contract in good faith, which Pennsylvania courts do not recognize as a cause of action.  *See GMH Assocs. v. Prudential Realty Group*, 752 A.2d 889, 905-06 (Pa. Super. Ct. 2000) ("Our courts have not determined whether a cause of action for breach of duty to negotiate in good faith exists in Pennsylvania."); *see also Commonwealth v. On-Point Tech. Sys., Inc.*, 870 A.2d 873, 874 (Pa. 2005) (4-3 decision) (Saylor, J., dissenting) (disagreeing with the majority's disposition of the case and recognizing "an implied duty to negotiate in good faith arising from the commitment to future negotiations"); *Liss v. Liss*, No. 2063, 2002 WL 576510, at *12 (Pa. Com. Pl. Ct. Mar. 22, 2002) (noting that "no Pennsylvania court has yet determined whether a cause of action for breach of a duty to negotiate in good faith is cognizable in Pennsylvania"); *U.S.A Mach. Corp. v. CSC Ltd.*, 184 F.3d 257, 264 (3d. Cir. 1999) (applying Pennsylvania law) (finding no duty to negotiate in good faith absent an express agreement to do so); *WP 851 Asssoc., L.P. v. Wachovia Bank, N.A.*, No. 07-2374, 2008 WL 114992, at *8 n.21 (E.D. Pa. Jan. 10, 2008) (applying Pennsylvania law) (noting that "absent an express term regarding a duty to negotiate in good faith, . . . no such duty would arise"); Restatement (Second) of Contracts, § 205 cmt. c (1981) (noting that while every contract imposes a covenant of good faith and fair dealing in its performance, there is no such obligation during the formation of the contract).

negotiations that Plaintiff accept an agreement that "contained inaccurate and misleading statements, [and] required [him] to admit to facts that he specifically denied. . . ." (Doc. No. 10 ¶¶ 40, 44, 82.)  For example, the proposed agreement required Plaintiff to write apologies "admit[ting] to misconduct that he knew had not occurred" and "agree[ing] to facts that were not true." (*Id.* ¶ 41.)  The proposed agreement also required Plaintiff, inter alia, to sign a unilateral release, participate in a course of "executive coaching" at his expense, and reimburse the Academy Defendants for their legal costs and counsel fees in the event of enforcement. (*Id.* ¶ 35.)  Plaintiff alleges that the Academy Defendants "knew that [he] could not accept these unreasonable conditions." (*Id.* ¶ 36.)  Thus, Plaintiff contends that the Academy Defendants acted "in bad faith" in performing their obligation to "negotiate" under the November Resolutions. (*Id.* ¶ 83.)

"The principle that a covenant of good faith is implied in every contract is a well-established axiom of Pennsylvania law." *Phila. Plaza – Phase II v. Bank of Am., N.A.*, No. 3725, 2002 WL 1472337, at *2 (Pa. Ct. Com. Pl. Jun. 21, 2002).  State and federal courts interpreting Pennsylvania law have repeatedly stated that "[e]very contract in Pennsylvania imposes on each party a duty of good faith and fair dealing in its performance and its enforcement." *Kaplan v. Cablevision of Pa., Inc.*, 671 A.2d 716, 722 (Pa. Super. Ct. 1996), *appeal denied*, 683 A.2d 883 (Pa. 1996); *see also Bedrock Stone & Stuff, Inc. v. Mfr. & Trader's Trust Co.*, No. 04-2101, 2005 WL 1279148, at *7 (E.D. Pa. May 25, 2005) (noting that "state and federal courts[] have repeatedly stated that every contract in Pennsylvania imposes on each party a duty of good faith and fair dealing in the performance and enforcement of the contract"); *Fraser v. Nationwide Mut. Ins. Co.*, 135 F. Supp. 2d 623, 643 (E.D. Pa. 2001) ("Under

Pennsylvania Law, a covenant of good faith and fair dealing is implied in every contract.");

*Liazis v. Kosta, Inc.*, 618 A.2d 450, 454 (Pa. Super. Ct. 1992) ("[E]very contract imposes upon

the parties a duty of good faith and fair dealing in the performance and enforcement of the

contract.").  The duty of good faith and fair dealing extends to contracts for employment of a

fixed term.  *See, e.g.*, *Baker v. Lafayette Coll.*, 504 A.2d 247, 255 (Pa. Super. Ct. 1986), *aff'd*,

532 A.2d 399 (Pa. 1987) (recognizing duty of good faith and fair dealing in a two-year

employment contract between a college and a professor).

> Plaintiff does not state a claim for breach of the duty of good faith and fair dealing

because Plaintiff has not grounded this claim on an enforceable contract.  The September and

November Resolutions did not amend the Employment Agreement.  *See infra*.  Before the

Foundation can face liability for failing to negotiate in good faith, Plaintiff must allege the

existence of an enforceable contract requiring the Foundation to "negotiate."  *See Sheinman*

*Provisions, Inc. v. Nat'l Deli, LLC*, No. 08-0453, 2008 WL 2758029, at *3 (E.D. Pa. July 15,

2008) (applying Pennsylvania law) ("In order to plead a cause of action for breach of the

covenant of good faith, whether it is an express or implied covenant, a plaintiff must properly

plead the elements of a claim of breach of contract."); *Pa. Transp. Auth. v. Holmes*, 835 A.2d

851, 859 (Pa. Commw. Ct. 2003) ("In the absence of a contractual relationship between [the

parties], there is no basis for asserting the breach of good faith and fair dealing doctrine.").

Therefore, Count II must be dismissed.

3.      *Pennsylvania Wage Payment and Collection Law (Count III)*

Count III alleges violation of the Pennsylvania Wage Payment and Collection Law (the

"WPCL").  *See* 43 Pa. Stat. Ann. §§ 260.1 *et seq*. (West 2008).  The WPCL provides in part:

> Whenever an employer separates an employe[e] from the payroll, or whenever an
> employe[e] quits or resigns his employment, the wages or compensation earned shall
> become due and payable not later than the next regular payday of his employer on
> which such wages would otherwise be due and payable.

*Id.* § 260.5(a).  In order to state a claim under Section 260.5(a) of the WPCL, Plaintiff must

"aver that he was contractually entitled to compensation from wages and that he was not paid."

*Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 716 (Pa. Super. Ct. 2005).  The statute

applies to "back wages already earned."  *Allende v. Winter Fruit Distrib's, Inc*. 709 F. Supp.

597, 599 (E.D. Pa. 1989).  The WPCL does not create a statutory right to wages or other forms

of compensation; rather, the statute provides a vehicle for employees to recover earned wages

from an employer who has breached an underlying contractual obligation to provide such

compensation.  *See Weldon v. Kraft, Inc*., 896 F.2d 793, 801 (3d Cir. 1990).  The basic purpose

of the WPCL is "to remove some of the obstacles employees face in litigation by providing them

with a statutory remedy when an employer breaches its contractual obligation to pay wages."

*Hartman v. Baker*, 766 A.2d 347, 352 (Pa. Super. Ct. 2000) (*quoting Oberneder v. Link

Computer Corp*., 674 A.2d 720 (Pa. Super. Ct. 1996), *aff'd*, 696 A.2d 148 (Pa. 1997)).

The Academy Defendants argue that Plaintiff does not state a claim under the WPCL,

because deferred compensation was due only after Plaintiff's employment ended.  (*See* Doc. No.

11 at 21.)  Plaintiff disputes this assertion and maintains that "the WPCL allows recovery of

monies which are to be paid after the termination of an employee if that money [sic] so long as

the money has been earned and is owed to the employee at the time of his or her separation from

the company." (Doc. No. 16 at 23.)  Determination of whether the Academy Defendants owed

Plaintiff additional compensation under the Employment Agreement requires us to inquire into

the precise timing and nature of Plaintiff's termination.  This, in turn, requires us to determine

whether the termination comported with the terms of the Employment Agreement.  Such an

inquiry is factual in nature and can be undertaken only after the completion of discovery.

Accordingly, the Academy Defendants' motion to dismiss Count III will be denied.

       4.    *Negligence, Gross Negligence (Count IV)*

Count IV alleges negligence and gross negligence by Defendant H.R. Impact.  To support

a claim that Defendant H.R. Impact was negligent, Plaintiff must allege that (1) H.R. Impact had

a duty or obligation requiring it to conform to a standard of conduct; (2) it failed to conform to

the standard required; (3) there was a causal connection between the conduct and the resulting

injury; and (4) Plaintiff sustained a loss or damages.  *Morena v. S. Hills Health Sys.*, 462 A.2d

680, 684 n.5 (Pa. 1983).  Pennsylvania courts follow the Restatement approach that "one who

undertakes to render services in a profession or trade is required to exercise the skill and

knowledge normally possessed by members of that profession or trade in good standing in

similar communities."  *Robert Wooler Co. v. Fidelity Bank*, 479 A.2d 1027, 1031 (Pa. Super. Ct.

1984) (*citing* Restatement (Second) of Torts § 299 (1965)).  Gross negligence requires

"substantially more than ordinary carelessness, inadvertence, laxity, or indifference," and

generally must amount to a gross deviation from the ordinary standard of care for the profession.

*Legion Indem. Co. v. Carestat Ambulance, Inc.*, 152 F. Supp. 2d 707, 716 n.7 (E.D. Pa. 2001)

(*citing Albright v. Abington Mem'l Hosp.*, 696 A.2d 1159, 1164 (Pa. 1997)).

Plaintiff alleges that Warrin was an agent of Defendant H.R. Impact who offered her

professional services, and that she had a duty to perform her services with reasonable care in accordance with industry standards.  (*See* Doc. No. 10 ¶¶ 19-24, 28.)  Plaintiff contends that Warrin did not meet this duty, because she solicited complaints, mislead witnesses, and mischaracterized information during a sham investigation that was "designed" to justify termination of Plaintiff's employment.  (*Id.* ¶ 24.)  For example, Warrin allegedly drafted "distorted and slanted" accounts of interviews that she conducted with female employees "in such a fashion as to suggest that [Plaintiff] had committed sexual harassment," when, in fact, he had not.  (*Id.* ¶ 23.)  Plaintiff contends that Warrin's actions "were not calculated to bring prompt resolution" to concerns about Plaintiff's conduct, but instead "designed to manufacture a 'cause' for terminating [Plaintiff's employment]."  (*Id.* ¶ 24.)  Plaintiff concludes that Warrin's actions failed to conform to the standards of the industry, or grossly deviated from those standards, which caused injury.

The facts underlying Count IV appear to sound more in intentional tort than in negligence.  However, this is not fatal to Plaintiff's claim.  Federal courts applying Pennsylvania law have held that "[i]ntentional acts might serve as the basis for negligence claims in a variety of situations," since the intentional acts may be relevant to showing conduct below the reasonable standard of care necessary to make out a case of negligence.[6]  *Klump v. Nazareth*

---

[6] We are aware of no Pennsylvania state court that has addressed the issue of whether intentional conduct can support a negligence claim.  The Third Circuit has noted that some categories of intentional conduct – specifically, intentionally tortious conduct – do not support a claim of negligence in certain jurisdictions.  *See In re Diet Drugs*, 369 F.3d 293, 312 n.11 (3d Cir. 2004) (*citing Dairy Road Partners v. Island Ins. Co.*, 992 P.2d 93, 114-15 (Haw. 2000); *Ins. Co. of N. Am. v. Miller*, 765 A.2d 587, 601 (Md. 2001) (additional citations omitted)).  Decisions from those jurisdictions are grounded in the proposition that "the words 'negligence' and 'intentional' are contradictory," inasmuch as negligence connotes carelessness, whereas intent connotes purposefulness.  *Miller*, 643 S.W.2d at 313.  But "even in those jurisdictions where negligence and intentional torts are mutually exclusive," the *Diet Drugs* court observed that

*Area Sch. Dist.*, 425 F. Supp. 2d 622, 643 (E.D. Pa. 2006).  In *Klump*, a high school student and

his parents brought a negligence claim against a school district and various school officials after

the student's teacher and assistant principal allegedly confiscated his cell phone, accessed his

voice mail and text messages, and used the cell phone to call other students to determine whether

they were violating the school's cell phone policy.  *Id.* at 627.  The school district moved to

dismiss the negligence claim on the grounds that under Pennsylvania law, "intentional acts

cannot be the basis for a claim for negligence."  *Id.* at 643.  The court disagreed, reasoning that

intentional or reckless behavior "is often relevant to showing conduct below the reasonable

standard of care necessary to make out a case of negligence." *Id.* (*citing Diet Drugs*, 369 F.3d at

312.)  The court concluded that, "we cannot say that the intentional acts alleged by plaintiffs in

their Complaint are incapable of supporting a state-law claim for negligence."  *Id.*  Thus, the

court did not dismiss the student's negligence claim.

Like the court in *Klump*, we cannot say that the intentional acts that Plaintiff alleges in

the amended complaint are "incapable of supporting a state-law claim for negligence."  425 F.

Supp. 2d at 643.  Plaintiff avers that Warrin solicited complaints, mislead witnesses, and

mischaracterized information in a way that was  "designed to manufacture a 'cause' for

terminating [Plaintiff's employment]."  (Doc. No. 10 ¶ 24.)  This is intentional conduct, but it

"may be relevant to showing conduct below the reasonable standard of care necessary to make

out a case of negligence." *Diet Drugs*, 369 F.3d at 312 n.11.  We are satisfied that Plaintiff has

plead all the essential elements of a negligence claim.  Defendant H.R. Impact's motion to

---

"intentional conduct may be relevant to negligence so long as it does not involve intent to bring
about the harmful result."  369 F.3d at 312 n.11 (citations omitted).  For example, "intentional or
reckless behavior is often relevant to showing conduct below the reasonable standard of care
necessary to make out a case of negligence." *Id*.

dismiss Count IV will be denied.  We defer to a later time consideration of whether Defendant

H.R. Impact's alleged conduct was grossly negligent.

5.    *Intentional Interference with Contractual Relations (Count V)*

Plaintiff asserts in Count V that Warrin conducted her investigation with an intent to

cause the VFMAC to terminate Plaintiff's employment in violation of the Employment

Agreement.  To support a claim of intentional interference with contractual relations, Plaintiff

must allege that (1) a contract existed between Plaintiff and a third party; (2) Defendant intended

to harm Plaintiff by interfering with that contractual relationship; (3) Defendant lacked

justification for the interference; and (4) Plaintiff suffered damages.  *See Bealer v. Mut. Fire,*

*Marine & Inland Ins. Co.*, No. 04-5915, 2005 WL 1819971, at *7 (E.D. Pa. Aug. 1, 2005)

(outlining elements); *see also Capecci v. Liberty Corp.*, 176 A.2d 664, 666 (Pa. 1962) ("[O]ne

has the right to pursue his business relations or employment free from interference on the part of

other persons.").  Defendant H.R. Impact argues that Plaintiff has failed to allege the second and

third elements of the cause of action, or any facts to support their inference.

The second element requires Plaintiff to allege that Defendant H.R. Impact intended to

harm Plaintiff by interfering with the contractual relationship.  *See Bealer*, 2005 WL 1819971, at

*7.  Plaintiff claims that Warrin began the investigation fully aware that the purpose of the

investigation was to determine if there was cause to terminate Plaintiff's employment.  (Doc. No.

10 ¶ 26.)  Plaintiff further claims that Defendant H.R. Impact performed the investigation with

the specific intent of causing the VFMAC to terminate the Employment Agreement.  (Doc. No.

10 ¶ 28.)  We agree with the court in *Bealer* that, "whether [Plaintiff] can actually prove that

[Defendant's] conduct was intended to cause interference . . . is a question for another day.  At

this stage, [such] allegations are sufficient to survive a motion to dismiss." 2005 WL 1819971, at *7 (finding mere allegations of intent sufficient to survive a 12(b)(6) motion when coupled with statements that the plaintiff was harmed by the defendant's conduct in caused a third party to breach). Although Plaintiff has not alleged that Defendant acted with ill will, "[t]he . . . element of purpose or intent need not be malice or ill will; rather, it refers to purposeful interference without justification." *Collincini v. Honeywell, Inc*., 601 A.2d 292, 295 (Pa. Super. Ct. 1991). As the Pennsylvania Superior Court has noted, "it will be the rare defendant who admits he did intend to interfere with the plaintiff's contractual relations." *Id*. "Therefore, the jury usually will be called upon to draw an inference from circumstantial evidence." *Geyer v. Steinbronn*, 506 A.2d 901, 910 (Pa. Super. Ct. 1986). Plaintiff will be given the opportunity to develop that evidence.

The third element requires Plaintiff to allege that Defendant H.R. Impact lacked justification for the interference. *See Bealer*, 2005 WL 1819971, at *7. Defendant H.R. Impact contends that Warrin merely transcribed her interviews and provided truthful information to the VFMAC. Defendant H.R. Impact argues that Plaintiff has not stated a claim that its actions were without justification. (*See* Doc. No. 12.) However, Defendant H.R. Impact itself has suggested that the analysis necessary to determine whether the alleged interference was improper is also factual in nature.[7] Whether Warrin's statements were justified is a factual question that is more

_____

[7] Defendant H.R. Impact relies on, inter alia, the Restatement (Second) of Torts § 767 to support its position that Plaintiff failed as a matter of law to allege that H.R. Impact's alleged interference was unjustified. That section states as follows:

In determining whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper or not, consideration is given to the following factors:

properly addressed at the close of discovery.  Plaintiff's allegations are sufficient to state a claim for intentional interference with contractual relations.

### 6.    *Punitive Damages*

Defendant H.R. Impact asks us to strike the *ad damnum* clauses seeking punitive damages in Counts IV and V.  In Pennsylvania, "[a] showing of mere negligence, or even gross negligence, will not suffice to establish that punitive damages should be imposed."  *Arias v. Decker Transp. and Maud Blue*, No. 06-0638, 2008 WL 450435, at *3 (M.D. Pa. Feb. 14, 2008); *Vance v. 46 and 2, Inc.*, 920 A.2d 202, 207 (Pa. 2007) ("[W]here a tortfeasor's mental state rises to no more than gross negligence, punitive damages are not justified.").

Count V alleges that Defendant H.R. Impact intentionally conspired to "build a case" to terminate Plaintiff for cause.  (Doc. No. 10 ¶ 18.)  Plaintiff further alleges that Defendant H.R. Impact solicited complaints, mislead witnesses, and sought to elicit interview answers that were favorable to the purpose of justifying a "for cause" termination.  (*Id.* 10 ¶ 94.)  Plaintiff asserts that these actions were taken with the express intention of causing the termination of his employment contract.  (*Id.* ¶ 97.)  If Plaintiff's allegations are accepted as true, they would be sufficient to support a claim for punitive damages.  Therefore, Defendant's motion to strike

---

(a) the nature of the actor's conduct,
(b) the actor's motive,
(c) the interests of the other with which the actor's conduct interferes,
(d) the interests sought to be advanced by the actor,
(e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
(f) the proximity or remoteness of the actor's conduct to the interference and
(g) the relations between the parties.

Restatement (Second) of Torts § 767.  These subsections demonstrate that whether Defendant's alleged interference is improper or unjustified is a question of fact.

Plaintiff's punitive damages requests will be denied.

     **C.**     **Motion to Strike References to Unemployment Compensation Proceedings**

The Academy Defendants move to strike paragraphs 53 - 57 and Exhibits H and I of the amended complaint.  These paragraphs and exhibits reference the Pennsylvania Unemployment Compensation Review Board's findings and decisions with regard to Plaintiff's termination. (*See* Doc. No. 11-13 at 22-23.)  Rule 12(f) permits the Court to strike portions of a pleading if they are "redundant, immaterial, impertinent or scandalous."  Fed. R. Civ. P. 12(f).  "[M]otions to strike are generally viewed with disfavor . . . [and] are often not granted if there is an absence of a showing of prejudice to the moving party."  *Great West Life Assur. Co. v. Levithan*, 834 F. Supp. 858, 864 (E.D. Pa. 1993) (*citing United States v. Marisol*, 725 F. Supp. 833, 837 (M.D. Pa. 1989)); *see also Corr. Med. Care, Inc. v. Gray*, No. 07-2840, 2008 WL 248977, at *18 (E.D. Pa. Jan. 30, 2008) ("Motions to strike are generally disfavored if used . . . as an attempt to summarily dismiss some question, of either law or fact, which the court ought to hear and determine.").  "[I]mmateriality under this [Rule 12(f)] has been defined as 'any matter having no value in developing the issues of a case.'"  *In re Catanella and E.F. Hutton and Co. Sec. Litig.*, 583 F. Supp. 1388, 1400 (E.D. Pa. 1984) (*quoting Oaks v. Fairhope*, 515 F. Supp. 1004, 1032 (S.D. Ala. 1981).

The Academy Defendants argue that the amended complaint contains irrelevant and prejudicial references to proceedings from the Pennsylvania Unemployment Compensation Review Board ("PUCRB").  Defendants first contend that under Pennsylvania law, findings from PUCRB hearings do not have a preclusive effect on later proceedings.  *See Rue v. K-Mart Corp.*, 713 A.2d 82, 86 (Pa. 1998).  Defendants next argue that they will be prejudiced if the allegations

and exhibits are allowed to remain in the amended complaint because Defendants "will be forced to defend allegations which are inadmissible because they have no evidentiary or preclusive value." (*See* Doc. No. 11-13 at 23.)

Defendants correctly interpret Pennsylvania law regarding the preclusive effect of PUCRB proceedings and findings. *See Rue*, 713 A.2d at 86; *Torres v. EAFCO, Inc*., No. 00-2846, 2001 WL 41135, at *3 (E.D. Pa. Jan. 17, 2001) (noting that "the courts of Pennsylvania no longer apply the doctrines of preclusion in the unemployment compensation context"). The Pennsylvania Supreme Court has held that, "[t]he substantial procedural and economic disparities between unemployment compensation proceedings and later civil proceedings negate the preclusive effect of a Referee's factual findings." *Rue*, 713 A.2d at 86. Thus, the factual findings from Plaintiff's PUCRB proceedings have no preclusive effect here. *See id.*

We must therefore determine whether paragraphs 53 - 57 and Exhibits H and I in the amended complaint, which reference the PUCRB findings and decisions, are "redundant, immaterial, impertinent or scandalous." Fed. R. Civ. P. 12(f). We conclude that they are not. Decisions from such administrative proceedings have been found to be admissible evidence in federal courts. *See Helfrich v. Lehigh Valley Hosp*., No. 03-5793, 2005 WL 1715689, at *20 (E.D. Pa. July 21, 2005) (acknowledging that a decision of the PUCRB can be admissible and probative, but finding it did not create a genuine issue of material fact of discrimination in a Title VII case because of the "divergent factual, legal, and policy considerations addressed by the Referee and this Court"); *see also Altman v. Port Authority of N.Y. and N.J.*, 879 F. Supp. 345, 349 (S.D.N.Y. 1995) (holding that jury in an ADEA case properly considered a New Jersey Department of Labor decision that the plaintiff had been harassed by his supervisors); *Stokes v.*

*General Mills, Inc.*, 754 F. Supp. 312, 316 (W.D.N.Y. 1991) (noting that unemployment compensation referee's findings are admissible in evidence).  This is because "[d]ecisions by state unemployment compensation officials may have probative value."  *Helfrich,* 2005 WL 1715689, at *20 (*citing Barfield v. Orange County*, 911 F.2d 644 (11th Cir. 1990), *cert. denied*, 500 U.S. 954 (1991); *Baldwin v. Rice*, 144 F.R.D. 102 (E.D. Cal. 1992)).

      Decisions by state unemployment compensation officials may have probative value when the parties dispute a defendant's reason for terminating a plaintiff's employment.  *See Fitch v. R.J. Reynolds Tobacco Co.*, 675 F. Supp. 133, 138 (S.D.N.Y. 1987).  The plaintiff in *Fitch* alleged that the defendant wrongfully terminated his employment because of race.  *Id*. at 134.  The defendant countered that the termination was justified because the plaintiff falsified records.  *Id*. at 136.  During an earlier unemployment compensation proceeding, an administrative law judge found that "there was no evidence [that] the records were falsified."  *Id*. at 137.  The court denied the defendant's motion for summary judgment, concluding that the findings from the unemployment compensation proceeding were sufficient to present a "genuine issue of material fact for the trier-of-fact to resolve."  *Id*.  The court noted that, "[w]hile not dispositive, this finding and the subsequent affirmance by the Unemployment Insurance Appeals Board is admissible evidence . . . [and] is to be given weight in accordance with the nature of the administrative proceeding, including the participation of the parties."  *Id*.

      We cannot conclude in this case that Plaintiff's averments should be stricken under Rule 12(f).  The PUCRB findings "may have probative value," since Plaintiff disputes the termination of his employment for insubordination and the PUCRB made findings related to his conduct.  *See Helfrich,* 2005 WL 1715689, at *20.  Like the plaintiff in *Fitch* who claimed that the

defendants offered a false reason for terminating his employment, Plaintiff here claims that the Academy Defendants offered a false reason – sexual harassment – for terminating the Employment Agreement "for cause."  *See* 675 F. Supp. at 138.  At this juncture, we are satisfied that the averments and exhibits in the amended complaint are not "redundant, immaterial, impertinent or scandalous."  *See* Fed. R. Civ. P. 12(f).  *Cf. Ortiz v. Stratford*, No. 07-1144, 2008 WL 4630527, at *5 (D. Conn. Oct. 14, 2008) (granting a motion to strike a brief where "plaintiffs have failed to show that it is admissible evidence"); *Contracts Materials Processing, Inc. v. Kataleuna GmbH Catalysts*, 164 F. Supp. 2d 520, 533 (D. Md. 2001) (granting a motion to strike paragraphs that contained "nothing more than self-serving opinions [that] are not supported by any other admissible evidence").  The Academy Defendants' motion to strike will be denied.

### D.    Motion for a More Definite Statement

The Academy Defendants move for a more definite statement from Plaintiff as to three issues:  (1) the names of individual members of the Board of Trustees involved in Plaintiff's termination of employment; (2) the names of the members who played an active role in the Foundation's failure to pay Plaintiff wages owed; and (3) the factual basis for Plaintiff's claims under the WPCL.[8]  Rule 12(e) states in relevant part:  "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading."  Fed. R. Civ. P. 12(e); *see also Schaedler v. Reading Eagle*

---

[8] The Academy Defendants also moved for a more definite statement "striking the references to the Pennsylvania unemployment compensation proceedings between Plaintiff and the Academy."  (Doc. No. 11-13 at 25.)  This request is merely a restatement of the Academy Defendants' motion to strike, addressed *infra*.

*Publ'n, Inc.*, 370 F.2d 795, 798 (3d Cir. 1967) (stating a motion for a more definite statement is appropriate in "the rare case where because of the vagueness or ambiguity of the pleading the answering party will not be able to frame a responsive pleading").

The Academy Defendants' motion for a more definite statement will be denied.  As discussed above, the Board of Trustees will be dismissed from this action, thereby rendering moot the Academy Defendants' motion as to the first point.  Defendants second point can be covered in discovery.  Finally, as discussed above, Plaintiff has successfully stated a claim for recovery under the WPCL.  Plaintiff has alleged facts sufficient for the Academy Defendants to frame a responsive pleading and prepare their factual and legal defense.  (*See* Doc. No. 16.).

### III.    CONCLUSION

For these reasons, we will grant in part and deny in part Defendants' motions to dismiss. An appropriate Order follows.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PETER A.C. LONG,                           :
                                           :    CIVIL ACTION
          v.                               :
                                           :    No. 05-4454
VALLEY FORGE MILITARY ACADEMY              :
FOUNDATION, ET AL.                         :

## <u>ORDER</u>

AND NOW, this <u>8th</u> day of <u>December</u>, 2008, upon consideration of Defendants'

Motions to Dismiss Plaintiff's Amended Complaint (Doc. Nos. 11 and 12), and all responses

thereto, it is ORDERED as follows:

1.    Defendant Board of Trustees is DISMISSED from this action without prejudice.

2.    Defendant Board of Trustees' motion to dismiss Count I is DENIED as moot.

3.    Defendant Foundation's motion to dismiss Count II is GRANTED, and Count II
      of the Amended Complaint is DISMISSED.

4.    Defendant Foundation's motion to dismiss Count III is DENIED.

5.    Defendant H.R. Impact's motion to dismiss Counts IV and V is DENIED.

6.    Defendant H.R. Impact's motion to strike the *ad damnum* clauses seeking
      punitive damages in Counts IV and V is DENIED.

7.    Defendant Foundation's motion to strike allegations and exhibits is DENIED.

8.      Defendant Foundation's motion for a more definite statement is DENIED.

IT IS SO ORDERED.

BY THE COURT:

_____
R. Barclay Surrick, Judge